**In re Samuel Ray PARRISH, Bankrupt.**

**Sharman Rae McVAY, Appellant,**

v.

**Samuel Ray PARRISH, Appellee.**

**Civ. No. W–92–CA–270.**

United States District Court,
W.D. Texas,
Waco Division.

Dec. 28, 1992.

---

JoAnn H. Means, Dawson, Sodd, Moe & Means, P.C., Barbara Moe, Corsicana, TX, for appellant.

Pete Andres, Thurman, Harrison & Steck, Arlington, TX, William E. Stallings, Waco, TX, for debtor/appellee.

### MEMORANDUM OPINION

WALTER S. SMITH, Jr., District Judge.

Came on this day to be considered the appeal of a bankruptcy Order entered by Judge Larry E. Kelly on August 24, 1992, vacating the Appellant's judicial lien as an impairment of Appellee's Texas homestead exemption. 144 B.R. 349.

### I. *Background*

The Appellant, Sharman Rae McVay ("McVay"), and the Appellee, Samuel Ray Parrish ("Parrish"), were married on March 6, 1982. On March 6, 1983, Parrish inherited the real property that is the subject of this litigation. A home was subsequently constructed on this inherited land, using money from an early termination benefit received by Parrish. On March 21, 1991, the parties were granted a Decree of Divorce by the 87th Judicial District Court of Freestone County. Pursuant to a jury verdict, the Decree of Divorce granted McVay a judgment against Parrish for $76,500.00, representing half of the reimbursement to the community estate, ordered by the trial court, for im-

provements made to Parrish's inherited separate property, secured by an "equitable lien" in McVay's favor against the subject real property. The jury found that the "early termination benefit" was not a previously acquired retirement account earned by Parrish, but rather community income. Parrish filed for Chapter 7 bankruptcy relief on May 29, 1991, and thereafter filed the underlying complaint against McVay to determine the dischargeability of her judgment lien against him.

This Court must determine whether the bankruptcy court's "Order Avoiding Judgment Lien" should be reversed, thereby validating the equitable lien awarded to McVay in the division of community property upon the divorce of McVay and Parrish. The Order of the bankruptcy court totally nullified the effect of the order of the state trial court; stripped McVay of court-awarded compensation for community improvements erected during the marriage upon Parrish's separate unimproved real estate; and cut off McVay's homestead interest in those improvements.

### II. *Standard of Review*

■ The bankruptcy court's conclusions of law are subject to plenary review. *Matter of Nobleman,* 968 F.2d 483, 485, n. 5 (5th Cir.1992); *In re Delta Towers, Ltd.,* 924 F.2d 74, 76 (5th Cir.1991). Its findings of fact will be upheld unless found to be clearly erroneous. *Matter of Bennett,* 970 F.2d 138, 139 (5th Cir.1992); *In re Missionary Baptist Foundation, Inc.,* 712 F.2d 206, 209 (5th Cir.1983).

### III. *Discussion*

#### A. *Bankruptcy Exemption Statute:*

■ McVay is a judgment creditor seeking to enforce a judgment lien. The bankruptcy exemption statute, 11 U.S.C. § 522(f)(1), entitles the debtor to avoid the fixing of a judicial lien on an interest of his exempt property (Texas homestead). In *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), the Supreme Court held that a debtor cannot use § 522(f)(1) to avoid a lien on an interest acquired *after* the lien attached. Therefore, the critical inquiry is whether the debtor ever possessed the interest to which the lien

fixed, before it fixed. If he did, § 522(f)(1) permits the debtor to avoid the fixing of the lien on that interest.

Parrish acquired his property through inheritance in 1983. From that point forward, it was his separate property. The fact that it was later improved using community funds does not change the character of the property. Under the inception of title rule, the character of property is fixed upon the inception of title. Parrish clearly had an interest in the property prior to the fixing of the lien; therefore, he can avoid the fixing of the lien on that interest.

### B. *Texas Law:*

The Texas Supreme Court decision in *Heggen v. Pemelton,* 836 S.W.2d 145 (Tex.1992), also controls the disposition of this case. Although this decision was not yet final at the time of Judge Kelly's Order, it has now become final. In *Pemelton,* Charlotte Heggen and Billy Gene Pemelton were married in 1960. In 1965, they settled on a 32–acre ranch owned by Ms. Heggen's parents, who later deeded the tract to Ms. Heggen in 1969. In 1988, Ms. Heggen filed for divorce. As part of the division of property, the court awarded Ms. Heggen the 32–acre separate property homestead, and recognized Mr. Pemelton's right of reimbursement for any homestead improvements made with community funds. The court also ordered Ms. Heggen to pay $150,000 to Mr. Pemelton for his community interest in the homestead and imposed an equitable lien on the homestead in order to enforce the court's judgment.

The Supreme Court recognized that "trial courts may impose equitable liens on one spouse's *separate real property* to secure the other spouse's right of reimbursement for community improvements to that property." *Pemelton* at 146. The Court noted, however, that trial courts "may not impress such liens, absent any compensable reimbursement interest, simply to ensure a just and right equitable division." *Id.*

The Court's holding, however, is much more narrow than the above statements might imply. The Court held that under the Texas Constitution, there are two requirements to properly impress an equitable lien

on a spouse's separate property homestead to secure a non-owner spouse's right of reimbursement. First, the lien must burden the separate real property for reasons relating to securing the non-owner spouse's reimbursement interest, not just to secure a just and right equitable division. Second, the lien must fit into one of the categories allowed by the Texas Constitution; that is, a purchase money lien, a tax lien, or a home improvement lien for which the work and material had been contracted for in writing with the consent of both spouses. *Id.* at 147–48. Failure to meet these requirements would impermissibly allow the non-owner spouse to foreclose upon the owner spouse's homestead, "a result contrary to the protections plainly afforded homesteads by [the Texas] Constitution." *Id.* at 148. This result would impermissibly divest the owner spouse of separate real property without sufficient legal basis. *Id.* The lien in *Pemelton* failed to meet both parts of this two-part test.

The disputed issue in this case, therefore, is whether the equitable lien imposed by the divorce court against Mr. Parrish's separate real property conformed with the above test. With regard to the first part of the test, the Court in *Pemelton* found that the trial court's imposition of an equitable lien on Ms. Heggen's separate real property was simply an attempt to impose a just and right equitable division; no serious reimbursement claim was asserted. *Id.* at 146. This is not true in this case, where a jury found that community funds were used to enhance the value of Mr. Parrish's separate real property. Therefore, this Court is of the opinion that the first part of the test has been satisfied; the lien burdened the separate real property for reasons relating to securing Ms. McVay's reimbursement interest, not just to secure her a just and right equitable division.

With regard to the second part of the test, the *Pemelton* court determined that the lien in question did not fit into any of the three enunciated categories. *Id.* at 148. Judge Kelly came to the same conclusion in this case. The Appellee argues in his Brief to this Court that the lien against his home-

stead is invalid because there is no evidence that Parrish pledged the property to McVay as security for purchase money, or that he executed a lien to her for work and materials used in constructing improvements, contracted in writing, with the consent of both spouses.

The Appellant argues that the lien meets both the purchase money and improvement lien categories of the Constitutional test. Moreover, she asserts that "because the parties chose to use community 'cash' to pay for the construction of their home, there was no legal requirement to 'contract in writing' for the work and material." *Appellant's Brief* at 6. She further argues that Judge Kelly's construction of *Pemelton* is totally misplaced, and "would require the Parrishes to enter into a fraudulent mechanic's and materialmen's lien contract with a 'straw man' contractor in order to create a fictitious contractual lien to protect McVay's rights of reimbursement, even though they borrowed no money to purchase materials or to construct improvements on the unimproved real estate." *Appellant's Brief* at 7. Appellant's argument is totally misplaced. As pointed out in her own Brief, the mechanic's and materialmen's lien is intended to protect the priority and validity of a contractor's lien on an owner's homestead, not the potential lien of a divorcing spouse. Therefore, the strictures enunciated in *Pemelton* were not intended to include this type of lien. The sole fact that the community funds were used to build a house on the separate real property does not equate in any way to a home improvement lien. Accordingly, this Court is of the opinion that Judge Kelly's construction of the *Pemelton* case was correct.

#### IV. *Conclusion*

Upon careful consideration, the Court is of the opinion that Judge Kelly's decision in the bankruptcy proceeding below was correct and should be affirmed. Accordingly, it is

ORDERED that Judge Kelly's Memorandum Opinion in Bankruptcy Case No. 91–60631–LK is AFFIRMED in all respects consistent with this opinion. It is further

ORDERED that this case be REMANDED to the bankruptcy court for further proceedings not inconsistent with this opinion.