*Court Of Appeals*
*Fourth Court of Appeals District of Texas
San Antonio*

# MEMORANDUM OPINION

No. 04-07-00691-CV

Mario **MARTINEZ**,
Appellant

v.

Melinda **COSTILLA**,
Appellee

From the 83rd Judicial District Court, Val Verde County, Texas
Trial Court No. 26243
Honorable Carl Pendergrass, Judge Presiding

Opinion by:    Alma L. López, Chief Justice

Sitting:       Alma L. López, Chief Justice
               Catherine Stone, Justice
               Sandee Bryan Marion, Justice

Delivered and Filed:   September 10, 2008

REVERSED AND RENDERED

Mario Martinez ("Martinez") and Melinda Costilla ("Costilla") are the parents of two children, Mario A. Martinez ("Mario") and Cecilia Ann Martinez ("Cecilia"). Martinez appeals the trial court's judgment awarding Costilla damages for Martinez's breach of a contractual provision to pay one-half of the children's college expenses which was contained in the parties' 1994 final divorce decree. In his first issue on appeal, Martinez contends that the contractual provision in the 1994 divorce decree is not enforceable as a contract based on section 14.06 of the Texas Family

Code. Alternatively, in his second issue, Martinez asserts that his obligation under the provision ceased to exist because Mario was not enrolled on a full-time basis. We reverse the trial court's judgment, and we render judgment that Costilla recover damages from Martinez in the sum of $2,150.14.

## ENFORCEABILITY OF PROVISION

In his first issue, Martinez contends that the contractual provision was not enforceable under section 14.06 of the Texas Family Code[1] because: (1) the provision did not expressly state that it was enforceable as a contract; and (2) no written agreement existed because Martinez did not sign the 1994 divorce decree. Martinez failed to assert either of these arguments before the trial court.

The only argument Martinez raised before the trial court with regard to the enforceability of the provision in question was that section 153.007(c) of the Texas Family Code expressly prohibited its enforcement as a contract. Martinez belatedly made this argument on the day of trial in a motion to dismiss. Martinez's argument in his motion failed to take into consideration that section 153.007(c) is contained in Chapter 153 of the Texas Family Code governing Conservatorship, Possession, and Access, and section 153.007 addresses agreements containing provisions for conservatorship and access.[2] TEX. FAM. CODE ANN. § 153.007 (Vernon Supp. 2008). Martinez's motion failed to cite section 14.06 or address its subsequent codification and the applicability of the

---

[1]With respect to "Child Support," section 14.06 was recodified in 1995 as section 154.124 of the Texas Family Code. Act of April 6, 1995, 74th Leg., R.S., ch. 20 § 1, 1995 Tex. Gen. Laws 113, 162. At that time, section 154.124 provided, "Terms of [an agreement between the parties containing provisions for support of the child] may be enforced by all remedies available for enforcement of a judgment, including contempt, but are not enforceable as contract terms *unless provided by the agreement*." *Id*. (emphasis added). Section 154.124 was amended in 2003 to delete the phrase "unless provided by the agreement." TEX. FAM. CODE ANN. § 154.124 (Vernon Supp. 2008); Act of May 20, 2003, 78th Leg, R.S., ch. 480 § 1, 2003 Tex. Gen. Laws. 1747. The amendment applies only to an agreement concerning child support entered into on or after September 1, 2003. Act of May 20, 2003, 78th Leg, R.S., ch. 480 § 2, 2003 Tex. Gen. Laws. 1747.

[2]As opposed to Chapter 154 of the Texas Family Code governing "Child Support," and section 154.124 addressing agreements pertaining to child support. TEX. FAM. CODE ANN. § 154.124 (Vernon Supp. 2008).

subsequent amendments to the codified section. A party will not be permitted to take a position on appeal that is not presented in the trial court. *Mandell v. Hamman Oil & Refining Co.*, 822 S.W.2d 153, 162-63 (Tex. App.—Houston [1st Dist.] 1991, writ denied); *see also Alamo Fireworks, Inc. v. Truckload Fireworks, Inc.*, No. 08-01-00229-CV, 2002 WL 313191, at *7 (Tex. App.—El Paso Feb. 28, 2002, no pet.) (noting error not preserved where trial argument was very different from one complained of on appeal) (not designated for publication); *In re M.J.M.L.*, 31 S.W.3d 347, 353 (Tex. App.—San Antonio 2000, pet. denied) (noting error not preserved where issue on appeal was different from one urged at trial). Because Martinez failed to present the complaints made in his first issue to the trial court, they are not preserved for our review.

## CESSATION OF OBLIGATION

In his second issue, Martinez asserts that his obligation under the provision ceased because both children were not enrolled in college on a full-time basis. Costilla responds that the trial court properly concluded that the parties' intent was to provide for the education of their children.

The provision in dispute reads as follows:

CONTRACTUAL CHILD SUPPORT
Petitioner, MELINDA MARTINEZ and Respondent, MARIO MARTINEZ, hereby consent and contract that additional child support for the children, in addition to the court ordered child support decreed above, will be provided for the children's expenses for attending any school of higher learning beyond the high school level. Both Petitioner and Respondent agree to pay one-half each for expenses such as tuition, room and board, books and travel for each child's expenses for their education beyond high school level. ***This contract is in effect as long as any of the children are enrolled in a school of higher learning on a full-time basis, (the child must be enrolled for a minimum of twelve (12) hours or more during any semester at the institution). The contract will cease if any of the children are not enrolled on a full-time basis and will not extend beyond five years after each child graduates from high school.***

(emphasis added). In his brief, Martinez argues that the term "any" means "one or both;" therefore, because Mario was not enrolled on a full-time basis, the contract ceased as to both children. Alternatively, Martinez asserts that the second sentence could be interpreted to mean the contract would only cease for any child who does not attend school on a full-time basis; therefore, the contract only ceased with regard to Mario but not Cecilia. Although Costilla criticizes the interpretation proffered by Martinez, she does not offer an alternative interpretation that would harmonize the problematic use of the term "any" in the final two sentences.

An agreed divorce decree is a contract subject to the usual rules of contract interpretation. *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984); *Guerrero v. Guerra*, 165 S.W.3d 778, 782 (Tex. App.—San Antonio 2005, no pet.). Our primary concern in interpreting a contract is ascertaining the true intent of the parties. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). We examine the writing as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Guerrero*, 165 S.W.3d at 782. We presume that the parties to a contract intend every clause to have some effect, and we give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Res., Inc.*, 939 S.W.2d at 121. If the contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe it as a matter of law. *Coker*, 650 S.W.2d at 393; *Guerrero*, 165 S.W.3d at 782. If, however, a contract is capable of more than one reasonable interpretation, it is ambiguous. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *Guerrero*, 165 S.W.3d at 782. Merely because the parties argue different interpretations does not make an agreement ambiguous. *Guerrero*,

165 S.W.3d at 782. This court will enforce an unambiguous contract as written. *Heritage Res., Inc.*, 939 S.W.2d at 121.

Although Costilla drafted her pleadings in an effort to avoid the fact that Mario was not enrolled in college during the fall semester of 2005, the evidence is undisputed that he was on scholastic dismissal that semester from the University of Texas at Austin, and Costilla testified, "He had to sit out a semester and that's the reason why he did not attend in fall of 2005." Accordingly, the evidence is undisputed that Mario was not enrolled on a full-time basis during the fall semester of 2005.

While we agree that the parties' intent was to provide for their children's education, the language used reveals that the parties also intended to place certain limits on their willingness to do so. Although the contractual language provides that the contract will remain in effect as long as "any" of the children are enrolled in a school of higher learning on a full-time basis, it also provides that the contract will cease if "any" of the children are not enrolled on a full-time basis. Although these provisions appear to conflict, we must examine the writing as a whole in an effort to harmonize and give effect to all the provisions of the contract, and we presume the parties intended every clause to have some effect. *Heritage Res., Inc.*, 939 S.W.2d at 121; *Coker*, 650 S.W.2d at 393; *Guerrero*, 165 S.W.3d at 782. The final sentence of the provision states, "The contract will cease if any of the children are not enrolled on a full-time basis and will not extend beyond five years after each child graduates from high school." Because the prior sentence provided the contract would remain in effect if any of the children, meaning either child, was enrolled on a full-time basis, the parties could not have intended for the contract to cease as to both children if either child was not enrolled on a full-time basis. By referring to "each child" in the final predicate phrase, the language

of the two sentences in context reveals the parties' intent that the contractual obligation would continue if either child was enrolled on a full-time basis, but that the obligation would end at different times for each child. Thus, the contractual obligation would cease as to a given child if that child: (1) was not enrolled on a full-time basis; or (2) was still attending college more than five years after he or she graduated from high school. This interpretation harmonizes and gives effect to all the provisions of the contract and is consistent with the parties' intent to provide for the children's education with certain limitations.

Because Mario was not enrolled on a full-time basis during the fall semester of 2005, Martinez was not contractually obligated to pay for one-half of his expenses after that date. Martinez was, however, contractually obligated to pay one-half of Cecilia's expenses.

### CONCLUSION

The trial court's judgment is reversed, and judgment is rendered that Costilla recover damages from Martinez in the sum of $2,150.14.[3]

Alma L. López, Chief Justice

---

[3]This sum is based on the following calculation:

| | | | |
|---|---|---|---|
| Fall 2005 | Tuition paid | $1065.50 | |
| | Books paid | $ 463.50 | |
| Spring 2006 | Tuition paid | $ 641.50 | ($1041.50 from Costilla's petition less $400 grant credit) |
| | Books paid | $ 129.96 | ($194.06 from Costilla's petition less $64.10 return credit) |
| Fall 2006 | Tuition paid | $ 826.50 | |
| | Books paid | $ 463.31 | |
| Spring 2007 | Tuition paid | $ 710.00 | ($1110 from petition less $400 grant credit) |
| | | $4300.27 divided by 2 = $2,150.14 | |